I'm going to call the case Geneva-Norman v. U.S. Bank, and Ms. Pouch, are you there? Yes, I'm here. Oh, fine. Okay. I see you now. All right. Well, good morning. Good morning to everyone. I'd like the attorneys, if you would, to formally identify yourselves for the record. Yes. Good morning, Your Honors.  Good morning, Ms. Tumey-Allen. And? Julie Pouch, from Lawyers' Committee for Better Housing, for Ms. Geneva-Norman. All right. I do want to advise the attorneys, first of all, the third panel member on this case is Justice David Ellis. He's not able to participate in the Zoom oral today, however, he has fully participated in the case, and tomorrow when the Zoom orals are available, the video, or I'm sorry, the arguments that counsel made today. So are both of you ready to proceed, then? Yes, Judge. Yes. All right. Then you may begin for the bank. Thank you, Judge. May it please the court. There are two separate and independent reasons why the judgment entered in favor of the plaintiff should be vacated and judgment entered in favor of the bank. May I interrupt you? I'm sorry. I meant to tell you both, each of you will have 10 minutes of uninterrupted argument so that you can present your argument, you can save some time for rebuttal. But the point is, is that the video sometimes, you know, doesn't catch up automatically, so we don't want to interrupt you. But I already did, I interrupted you once. But anyway, you'll have 10 minutes, so I'm going to have you on a clock. And with that, now you may resume. We'll start right now with your 10 minutes. Okay. Thank you, Judge. And could I just reserve like two or three minutes for rebuttal? Yes, certainly. Thank you, Judge. So there are two separate and independent reasons why the judgment entered in favor of the plaintiff should be vacated and judgment entered in favor of U.S. Bank. The first is because the doctrine of substantial compliance applies to the KCRO and there was  tried to pursue. The second independent and alternative basis is that there was a legal effect of Ms. Norman's acceptance of the lease offer that she received, albeit untimely, but when she received it, she accepted it. And there's a legal effect of that that was overlooked by the trial court and serves as an independent basis on which this judgment should be vacated. I will first turn to the substantial compliance doctrine. This is an issue that the trial court felt he had no power to address. He viewed this as a strict liability statute only with no give, meaning that because there was an admitted violation, there was nothing he could do. And in fact, those were his words at the summary judgment hearing. Once there was the violation, his hands were tied in his view. This is incorrect because we know from established case law that mandatory provisions, even such as those in the KCRO, can still be substantially complied with so as to achieve the purpose of those statutes. The KCRO is a liberal remedial statute, or ordinance rather. Its purpose is to protect tenants of foreclosed properties and ensure that those properties remain occupied as opposed to vacant so that tenants are not displaced and properties become the negative impacts of that on the respective communities are avoided. When considering whether a substantial compliance doctrine applies, there's a two-factor analysis. First, you consider the purpose of what the statute is intended to achieve, and the second, you address whether there was prejudice suffered by the other party due to the lack of strict compliance. When you apply these two factors, it is clear that the doctrine can be applied to the KCRO. The first prong of this test is making sure or considering whether substantial compliance achieves the purpose of the KCRO. As I mentioned just a few minutes ago, the purpose of the KCRO is to preserve and protect both the tenants and the rental properties that are litigated through foreclosure. The KCRO achieves this purpose by having certain notice requirements that are to be implemented. Under Section 040, for instance, when the change of ownership happens, tenants are to receive notice of that change of ownership. That notice is dictated what it's supposed to say in the statute, and it's supposed to also advise who is the agent or party in charge or who the tenants are to be dealing with going forward. The second notice component is the lease offer, which is what this case is about, the lease offer letter or alternative relocation assistance letter that is supposed to be provided with within a certain specified period of time. It is undisputed here that the U.S. Bank's lease offer extension letter and relocation assistance letter to Plaintiff Norman was tardy. There is no doubt about that. That is not a dispute. The question for this first prong is, can the purpose of the protection of both the tenants and the properties be achieved through less than strict compliance with that timeliness requirement under Section 050? And the answer is yes, because we have here evidence that it did just that. The plaintiff here received the notice. She received it tardy, but she received it, she accepted it, and she derived all the benefits that were supposed to come from the protections afforded her under the KCRO. Probably the best example of substantial compliance of the doctrine being applied to a statute is in Bell v. Gingrich, which is cited both in the trial court and in our briefs. But that case dealt with the Illinois Home Repair Act, and in that case, the court found that there was substantial compliance with the act even though the work order was unsigned and the statute required a signed work order. So what the court did was first consider, well, what's the purpose of the Illinois Home Repair Act? And it noted that the purpose of it was to facilitate communications between contractors and homeowners to ensure that there's good faith negotiation, one party's not being taken advantage of, and just to facilitate communication. So the court looked at, there's a written work order. This shows that the purpose of the act to facilitate those communications, those negotiations, was actually achieved. The work order was unsigned, but that was not enough for the court to say that substantial compliance could not be applied here because the purpose was nevertheless achieved. Another example of compliance or substantial compliance being applied is in the Fehrenbacher v. Mercer County. This case was cited to the trial court in the summary judgment briefing, and it dealt with the Illinois Highway Code, removal proceedings of employees under those provisions. And in that case, there was additional examples where substantial compliance was applied to the workers' comp and the probate acts. So there's ample examples of where substantial compliance is applied to mandatory statutory provisions, and that analysis is driven by whether or not the purpose of the statute of those provisions can be satisfied by something less than strict compliance. We have that here. As I said, the offer was made. It was tardy, but it was made. And the notices that were required before that, they were also given to the plaintiff. So there was an effort to comply, and the purpose of the statute was achieved through that compliance. The fact that it was late, that that lease offer extension letter was late, did not defeat the purpose of the statute, which was to ensure that the tenants had the option to either remain in the property or receive relocation assistance. The second prong of the substantial compliance analysis requires consideration of prejudice. It's our position that there was no prejudice here due to the technical deficiencies of the timeliness of the lease extension offer. The terms of the offer otherwise complied with the statute. The only problem with it was that it was technically untimely. But during that time frame, from when the change of ownership happened, which was in October of, October 23, 2015, and April 26, 2016, when the offer was given to Ms. Norman, she paid no rent. No rent was collected from her, and any rent checks that she did send were returned to her. Admittedly, the record shows that there was some lack or misunderstanding and miscommunications between the parties. However, what is clear is that there was no effort to collect rent from her because it was all returned, and that was consistent with the requirements of the KCRO. As I mentioned earlier, there's a section 040 that requires notice to tenants on change of ownership. That notice, although compliant with the information that was required and it was timely, it included incorrect information with respect to who is the agent to be contacted. So, because that was a technical deficiency, U.S. Bank was prohibited from, under the terms of section 040, from collecting rent, and it did not do so. So, Ms. Norman was able to reside rent-free until after the lease offer letter was given her, and then she accepted it, and now she continues to reside in her home at the statutory rate that was intended to be afforded her under the KCRO. We know that plaintiff experienced anxiety and confusion during this process, and that is admittedly regrettable. However, that emotional disappointment and turbulence is not sufficient to establish the prejudice required to defeat application of the substantial compliance doctrine. I would turn again to the Bell case, where, in that case, the defendant, homeowner, had not just disappointment with what she considered shoddy work and that she had to hire another contractor to perform the work that the plaintiff, in her view, did not complete properly or didn't do at all. She was also extremely dissatisfied, and the court noted that and said, well, that's still not sufficient because she still received everything she was entitled to receive protection-wise under the Illinois Home Repair Act. So, what Bell teaches is that emotional disappointment, in and of itself, as regrettable as it might be in this case, is still not sufficient when you look at the overall totality of the circumstances, which is this tenant was not displaced, she was not evicted, her rent was not collected, any rent payments she made, which she admittedly made those in good faith, they were returned to her, and they were returned to her because they could not be retained by a U.S. bank because of the difficulties or the requirements of the KCRO and the technical deficiencies in its lease offer letter. Now, once- You know, you've gone for 10 minutes. If you want to do a couple more, that's fine. Do you want to address the waiver now or later? Haven't you indicated that part of this is that she waived any rights under the Act? Yes. I can address it now, Judge, just very quickly. The alternative basis for vacating the judgment would be that there was a legal effect of the acceptance of the lease offer letter that was provided her in April 2016. It's important to note that during this time, it's alleged in the complaint, so it's a judicial admission that plaintiff was represented by counsel starting in January. She directed U.S. bank and its agents to contact her through her counsel. So starting in January, she had the benefit of legal representation, presumably it was aware of the fact that there was a KCRO violation, and in fact, could have filed suit right then. Could have filed suit the day after the letter was tardy, and did not. She didn't file suit in February. She did not file suit in March. She didn't even file suit in April before she received the letter that she ultimately accepted. But what she did do was receive this letter, note that it offered her an option that she wanted to accept, which was to remain in her apartment and extend her lease. So she accepted it. Now, there is a legal consequence to that. That means that by accepting the benefits of the ordinance, and accepting them even though the letter was untimely, that you then have implicitly waived the right to sue based on the defect of timeliness. And it's well settled now that we know that parties can waive a statutory right, even those rights that are created for their benefit under statute, as long as that waiver is voluntary, intentional, and knowing. All of those criteria are satisfied here. I am hard-pressed to envision how else there could be a more knowing, voluntary, and intentional relinquishment of a known right when someone who is represented by counsel receives a lease extension offer letter under a statute mandating certain requirements of that offer, and while represented by counsel, execute that offer, and then a year later turn around and sue based on timeliness, which they implicitly would have waived the right to sue because they accepted the offer. The acceptance of the offer was the clear volitional act. It was made with guidance from counsel. The cases on which the U.S. Bank relies are not an opposite as criticized by Planet. These cases involve themselves waiver by conduct. So the city of Peoria and the Peak cases, both are instances where strict compliance was expressly waived by conduct. Strict compliance here was waived by conduct. There is no other conclusion that would be reasonable, and an alternative conclusion would allow a party, say Ms. Norman, elected to relocate. She chose not to stay. She elected the $10,600 relocation fee, so she could then turn around a year later and sue for statutory damages and attorney's fees after benefiting from the relocation assistance because the relocation assistance that she accepted was offered untimely. It makes no sense. It is the epitome of inequity to allow something like that, to allow the KCRO to be used in that manner. The KCRO is a shield, but Planet Fear wants to use it as a sword, and that is not an equitable way to construe a liberal remedial statute. I'm going to have to let you have some time for rebuttal. We do want to have some questions. So with that, I'm going to ask Justice House if he would like to inquire at this point. Yes, I have a question about your substantial compliance argument. Your client eventually did offer a tenancy, a lease to the plaintiffs in this case, but it was after months, and it was after even people representing themselves as agent of your client offered $2,000 to get out. Isn't it reasonable for the trial court to have said, we want to discourage banks and people foreclosing on mortgages from putting people through that? And the very conduct of your client in this case is exactly what the city council sought to prohibit. And so when you belatedly comply, you did, but that's only because this particular tenant was pretty tenacious, but there may be many others who may have moved in the face of all this confusion, as you say. So wasn't it reasonable for the judge to say that the statute was not complied with and the statute required strict compliance to prevent the very type of events which occurred in this case? Well, Judge, the problem is the trial court didn't say that. The trial court didn't even engage, embark in the analysis, because that would be the first prong of the substantial compliance analysis. Is the effect or the purpose of the statute achieved through less than strict compliance? The trial court didn't even start. The trial court just said, oh, you admit, U.S. Bank, you admit that you failed to provide this timely. Well, there's nothing I can do because the statute says I have to do it this way. There was no analysis done of whether the doctrine even applied to the KCRO, let alone whether the facts of this case support substantial compliance, which we believe that they do on this record. So what the court could have done in addressing this would have been to look at the notes that were made part of the summary judgment briefing, and it's at page C283 and 284 of the record. There's a series of emails, internal emails, that were produced in discovery that show that there was an evolution of thought. So once the agent for, I think it was CART, Chicago Area Realty, came on board, which was in December, January timeframe, there were a series of emails starting in like, well, they were ongoing, but as relevant here, in March, there was a reference to waiting for a lockout date from the sheriff. So it looks like they're moving into eviction proceedings. However, the very same day, a few hours later, there's an email saying, no, we have an email from the client, or from the plaintiff, rather, and they want to remain in the apartment. So then the next day, they changed direction completely. They now say, okay, let's talk about lease activation. Then the next email, we have to get these KCRO notices out. So I would say that if the trial court had looked at this and had embarked on that analysis, maybe we would have had a more robust analysis of how these facts would apply to that. But what we have is a record where the court said, I can't do anything about this because you admitted you were on timely, and that was it. So what we're asking the court to do here, as a matter of first impression, is take that first step. Does the substantial compliance doctrine apply in the first instance? Two steps, purpose and prejudice. And then once you establish that those are satisfied, then we move into the very facts of the case. And we would say that on this record, if you look at these email notes, coupled with the interactions or the lease extension offer, the notices, the fact there was no eviction, all rents were returned, no rent was collected, overall, that shows that there was substantial compliance. Not perfect, that's what substantial compliance is. It's not going to be the perfect compliance. It's not going to be strict compliance. But compliance to satisfy the terms and provisions of the statute, which here are to protect both the tenants and the property, the tenants from being displaced and the property from being vacant. Justice House, do you have any other questions at this time? No, thank you, I don't. All right, I have a couple of questions. Now, we will be reviewing this de novo, correct? Yes. So any error that the trial judge made, if he made any in his review, is that something we have to concern ourselves with? Because we have to start fresh. And so starting fresh, my question to you is, the general rule, the typical rule, is that when the legislature indicates that something shall be done, that that is mandatory. Now, that's the general rule. But the cases you've cited, and really on this record, the rule that we first look at to determine whether a statute requires strict compliance or substantial, the first rule of interpretation is, if the statute is accompanied by some sort of penalty or consequence, it will be deemed mandatory and require strict compliance. I don't know how you respond to that, because the cases you've cited don't even talk about that, but that's where the trial judge, I think, was actually going. But that's the rule. If there's a penalty or a consequence, and in this case, there are several, we should find that strict compliance is the rule, not substantial. So how would you respond to that? So I would direct you to Bell, which dealt with the Illinois Home Repair Act. And the Illinois Home Repair Act provides a penalty. It's under the Consumer Fraud Act, which is a statute that allows the recovery of damages, including attorney's fees. So there is a penalty under that act. And no, Judge, you're correct that those cases didn't address that. But by the Bell case, not addressing that, but still, with the Illinois Home Repair Act being brought into the Consumer Fraud Act rubric, if you will, shows that that rule can be, it's out there, but it's not one that's going to take away from the ability to apply the doctrine, because there are other safeguards to that, too, because you have to still look at the purpose and the prejudice. And then you still have to consider whether or not there was actually substantial compliance. So I understand that rule, and I know that that was the preliminary and the primary argument in the response brief. But I would say that the Bell case shows that it's not, it does not trump the analysis. My question, again, is this. In the Bell case, the court never even considered the rule. It went to, you know, our issue is whether there was substantial compliance. And in that case, did the Home Repair Act have a penalty? The Home Repair Act directs all rights of action under the Consumer Fraud Act. So anyone with a right of action, and the Consumer Fraud Act has the penalties. Right. So not the act itself. No. But the way you remedy a violation of the Home Repair Act is under the Consumer Fraud Act. So it's essentially the penalties that are afforded under the Consumer Fraud Act. But in that case, the court never even considered whether or not there was a requirement that the statute be strictly complied with. No, that argument was not raised. And I don't think you cited a single case that actually talked about the court first, considering whether something requires strict compliance or substantial. Did you? No, that's right. Okay. All right. The other thing that you mentioned was that she had an attorney. So that means she waived, she knowingly acquiesced or waived in the late notice. But did you cite a case that says having an attorney means that you've made a waiver of your rights, that there's a knowing relinquished? No, and that's not really the argument. The argument is that she executed, whether she was represented by an attorney or not, she still executed that lease extension offer. It's the acceptance of the offer that would have waived or operated to waive. The fact that she was also represented by an attorney, and I would add, not just represented by any attorney, but in the record, in the transcripts, there's a suggestion that the attorneys that represented Ms. Norman in the trial court actually had a part in or authored the KCRO. So we're talking about very knowledgeable counsel about the KCRO. And the fact that she was represented by these attorneys underscores the knowingness and the voluntariness. It's not because she had an attorney, that's just one more factor. All right, another point is that in terms of substantial compliance, going back to kind of what Justice House asked you, and your opposing counsel is going to, you know, come back in a minute or two or start and say that there wasn't even substantial compliance here. Even though there was this original notice, she was never offered the actual moving fee, the correct amount, and when she was finally offered a new lease, that was like 167 days. I forget exactly how many days down the road. But counsel's going to argue that there was not even substantial compliance here. Well, there was, Judge, but she did receive the option to either relocate for the statutory amount or remain in her apartment. And that was in the April 27 letter. That was- But did you offer her the $10,000? Yes. Yes. But didn't she get one earlier that said, okay, all right, so- Yes, she did. She received a series of communications, and as I will candidly admit, the record shows that it was not the clearest communications, all right? And U.S. Bank was never, never hid that fact. U.S. Bank was always up front from minute one in the trial court that this was late, you know, there was a misunderstanding of who was whose agent, who was operating with what property. And I would just add that, you know, the manner in which the KCRO is to be construed here I think is significant for a lot of reasons, but not the least of which. Let's look at the realities here. The realities is when a bank takes a property that's a rental property in foreclosure, it is not in the business of operating or managing property. That is not what the bank is in business in. So, yes, there's the KCRO, and they are able to retain. They have to expend resources to retain agents to manage these properties and comply with the statutes. And at the same time, they're moving to try and sell this to a third party so that they can liquidate whatever they can out of the property and then move on to the next whatever project they have. But, and I would say that that is exemplified in the email exchanges at 283 and 284 on the record, you see that there are two paths here. They are trying, they're moving to try and get this property listed. They're also dealing with various communications from Ms. Norman herself. And as soon as they, it comes up that she wants to remain, then they move in that direction. Let's get the KCRO notices out. Let's get the lease offer letter out. These are all, they're within minutes, in some cases minutes, and then others like within a day. So, this is not a situation where there's an interest of the bank to do anything to displace these tenants. What they're trying to do is, at the same time as they've taken over this property, get it transferred into a third party so that they can presume the property management aspect of it, and then also comply with whatever regulations are in place while they're the owner of the property. So, there is no incentive here to disregard or, you know, play fast and loose with the provisions here, because as this case reflects, I mean, the way it stands right now, it's almost a gotcha game. This is, if you don't follow every single letter to the law, we'll accept whatever you give us, and then we're going to sue you, and then you're going to be held accountable. I mean, that defeats the purpose, really, that this is, like I said, it was a shield, and now it's going to be used as a sword. Well, in this particular case, though, the purpose of the act is to protect the tenants, primarily. And the bank, all these leasing agents or managing companies, they're all agents of the bank. That's a given, isn't it? Well, this isn't about the bank making sure that it can, you know, get the property into the hands of the third party and move things along. The purpose of this statute is to prevent people like Ms. Norman from being displaced because of a foreclosure in the first instance. That's the purpose of the statute. It's not to help the bank move things along and get it done. No, but it is to help, it's to provide the framework within which the bank has to operate. But what I meant by third party, I meant a third party purchaser, because they just want to unload the property. Once they become the owner, they want to just transfer it, sell it to a third party purchaser so that they can be done with the property. But in the interim, they have to expend resources to hire agents. In this case, there was confusion as to which property manager was managing which property. And there was, and once that was resolved, however, then Ms. Norman was, her wishes to remain in the property were trying to be realized. The email exchanges show that there was an effort to start lease activation. Let's get the documents out to her. Let's get her the notices. And then it all happened. Now, it happened slowly, but it happened. And that's the purpose. You're correct, Judge, that the purpose is to protect the tenants, but also to protect the property because if the property becomes vacant because the tenants become displaced, then vacant properties within the city of Chicago could create bigger problems, other problems. And so there's a dual purpose here. And that dual purpose was achieved, even though the lease offer was tardy. And everyone admitted it was tardy. All right. All right. We're going to move on now. Justice House, any further questions at this time before we move on to the? All right. All right. Thank you. And we'll give you some time to rebuttal. All right. And Ms. Pouch, you may proceed now. Thank you, Your Honors. So may it please the Court, on behalf of my legal aid organization, I truly appreciate the opportunity to argue this case before you today. This all started back in 2015 when Geneva Norman, a tenant who was 72 years young and had lived in the apartment for more than 20 years, found a letter taped to her door that said that her home had been sold as part of a foreclosure. Under the Keep Chicago Renting Ordinance, the bank had but a few obligations once it became the owner. The one here, the one issue here is set out in 050 of the KCRO. U.S. Bank was required to make an election and tell Ms. Norman in writing whether they would renew her lease or pay $10,600 in relocation assistance no later than 63 days after assuming ownership of the property. But that's not what happened here. Not at all. Instead, U.S. Bank blew past this mandatory deadline by over four months and then tried their darndest to get Ms. Norman to move without paying KCRO's relocation assistance. They admit all of this, but they want to pass. They said that that part of the ordinance, that mandatory 63-day deadline, it doesn't matter. But the bank can leave tenants like Ms. Norman in the lurch for hundreds of days, not knowing whether their home is still their home so long as the bank offers a lease at some point, any point, no matter how late the offer is. But to accept the KCRO's argument, or the bank's argument, this court would have to ignore the plain language of the KCRO as well as its purposes. Agreeing with U.S. Bank here would gut the KCRO. First, the KCRO's 63-day deadline is mandatory and requires strict compliance. We know this from the plain language of Section 050. Subsection A3 uses the word shall and no later than to impose a deadline and subsection F imposes a penalty for any violation of Section 050. First, we know here that shall should be interpreted as mandatory because the Chicago Municipal Code says so. Section 1-4-100 of the code states, except as otherwise explicitly provided in this code, the word shall is mandatory. I apologize to the court and counsel for overlooking this in my brief, but it's the code and should be applied. And again, that's Section 1-4-100 of the Chicago Municipal Code. Further, Illinois courts have generally held shall to indicate a mandatory obligation requiring strict compliance. As Justice McBride pointed out. And when shall is accompanied by a penalty or consequences, our courts have repeatedly recognized the language to be mandatory, to create a mandatory obligation requiring strict compliance. Here, Section 050 uses the word shall and imposes a penalty, statutory damages for any violation of the section. Notably, the bank doesn't really engage with any of our arguments related to the KCR's plain language in its briefs. Instead, U.S. Bank relies on Belle v. Gingrich, a fourth district breach of contract case that is completely distinguishable and does not actually provide a penalty. It relies on this case for the idea that substantial compliance can fulfill the KCRO's purpose. But U.S. Bank whittled down the entire purpose of the KCRO to nothing more than providing a lease offer, apparently at any time they wish. But as this court knows, the purpose is derived from the text. Again, the unambiguous language of the KCRO doesn't just require a lease offer, it sets out a mandatory deadline with a penalty to force the bank to make a decision to either renew the lease or pay relocation assistance. The penalty exists to ensure compliance from large corporate banks who would otherwise have zero incentive to comply. Further, when we look at the ordinance as a whole and its other provisions, it's clear that the purpose is to protect tenants, not banks from the damaging effects of foreclosure. The KCRO lays out a multifaceted approach to promote stability and ensure that tenants are provided with information about the new owner and are given certainty about the future in their housing in a timely manner. And for further support that the text means what it says, we can look to legislative history. The KCRO was amended in 2015 specifically to include this deadline. And why? Because without it, purchasers of foreclosed properties were never making the statutory election, leaving tenants unprotected, without information, and without certainty in their housing situation. Therefore, because the KCRO's deadline requires strict compliance and the bank admits they blew this deadline, this court should reject the KCRO's argument and apply the plain language of the KCRO and affirm. US Bank's argument fails even if this court finds that the KCRO's 63-day deadline is satisfied by substantial compliance. The bank's actions here do not, cannot constitute substantial compliance. US Bank attempts to paint a picture that its failure to comply with the KCRO is a mere technical tardiness and that its sins are absolved because it supposedly made a lease offer. First, that purported offer wasn't just a couple of days late, it was over four months late. Also, the bank took multiple actions that made Ms. Norman's housing situation as uncertain as possible. Right out of the gate, they gave Ms. Norman the wrong contact information. While she immediately tried to call the person listed, the calls understandably went unanswered. When Ms. Norman was finally able to speak with one of the bank's many agents months later, she was told by the bank they wanted her to move. Offering her only small amounts of money to move in a matter of weeks. They returned her rent payments without explanation and then ignored her calls. Cause an eviction order to be issued in a foreclosure case, even though they knew the mortgager didn't live there, a tenant did. And I should emphasize, Your Honors, that essentially all of this behavior occurred after US Bank had already missed the mandatory deadline. Most importantly, the only conduct the bank points to as demonstrative of their substantial compliance is a lease offer that's fake, and could have never been accepted by Ms. Norman. Indeed, US Bank made an offer to Ms. Norman on the very day they knew they would be transferring ownership of the property. And to add insult to injury, the offer by its own language was contingent on their continued ownership. Meaning the offer had been revoked before Ms. Norman even signed it, before she even received it. These attempts to get Ms. Norman to move and the revoked 12-hour offer seemed more like an effort by US Bank to cut its losses under the KCRL. US Bank's substantial compliance argument hinges on their claim that Ms. Norman got to stay in her home so she wasn't harmed, but that result has nothing to do with their conduct. If we look at what they actually did, it's clear the bank's actions did not substantially comply. They didn't comply at all. The bank's argument seems to be that it's unfair that they'd have to pay statutory damages for missing a deadline since they think it's not harmful, but that's not a substantial compliance argument. And although Ms. Norman wasn't required to prove up actual damages, it bears mentioning that Ms. Norman was harmed by US Bank's conduct as she averted in her unrebutted affidavit. Housing instability is harmful. It caused Ms. Norman extreme stress, anxiety. On a larger scale, housing instability damages neighborhoods, causing tenants to question whether they should take that job down the street or enroll their child in school in the fall, and causing tenants to move out of fear, maybe that's exactly what US Bank wanted here, and why it doesn't want to have to comply with the mandatory deadline. This court should reject any notion that US Bank's actions here somehow constituted substantial compliance with the KCRL. This court should also reject US Bank's argument that Ms. Norman waived her claim for statutory damages. Illinois law is clear. Waiver of a statutory right must be clear, expressed, and unmistakable. US Bank agrees that their purported offer said nothing about waiver, so there is no waiver. US Bank offers no authority that supports their claim that signing a lease offer without explicit language amounts to a waiver of statutory damages of more than $21,000. The fact that she had an attorney or when she could have filed her claim is irrelevant. And that lease offer, it was fake, so her acceptance didn't mean anything. This court should reject US Bank's argument of waiver. In its principle brief, the bank also makes some sort of argument that it should be granted equitable relief. But US Bank forfeited this issue because it did not seek equitable relief as a legal matter. What counsel points to, trial counsel's motions where he uses the word unfair or inequitable once or twice, and that does not preserve a legal claim. US Bank would have had the burden of showing a clear right to equitable relief and evidence supporting that the bank is entitled to it. Even if not forfeited, our courts have regularly held that equity must follow the law. And that means that this court still has to look to the language of the KCRO. Further, the trial court did not err by refusing to order equitable relief because to receive equity, you must do equity. And I ask, what did US Bank do that warrants equitable relief? They blew the KCRO's mandatory deadline by hundreds of days, no reason stated to this day, made her situation as uncertain as possible, and gave a fake lease offer. Yet, they want equity. This court should not give equity that was never asked for and that they don't deserve. And to conclude, if we accept the bank's arguments, the KCRO's mandatory deadline would be meaningless. We accept it. Make no mistake, purchasers of foreclosed properties will never comply with the KCRO's deadline because it's in their financial interest to wait and see if they can get away with not complying. And how do we know? Because it's exactly what was happening before the KCRO was amended in 2015. It's why the mandatory timeline and penalty exists in the first place. And finally, I cannot leave without addressing the elephant in the room. The COVID-19 pandemic has resulted in uncertainty and instability in the housing market. There will be foreclosures, maybe even another foreclosure crisis. The KCRO is needed. This court should reject the bank's request to gut the KCRO, apply the plain language of the ordinance, and affirm. I apologize. Justice Maus, do you have questions for counsel? No, I don't have any questions. Thank you. All right. I don't have any questions at this time either. So we will return for rebuttal. Thank you. Thank you, Judge. I just want to address a couple of points. The crux of the response argument was really focused on the substantial compliance doctrine, its application. And the argument is that applying it would gut the KCRO. Well, first, that's just not true. Applying the substantial compliance doctrine would not gut anything because you can't apply the doctrine unless the purpose of the statute is actually satisfied. And we've argued, and quite convincingly so, I believe, that the purpose of protection of the tenants and to insure against vacant properties in the city of Chicago is achieved, was achieved, by the tardy compliance of the lease extension offer. There are plenty of consequences that would befall an owner of foreclosed property, that's rental property, if they choose not to comply with the statute. They can't collect rent. The statutory penalties are significant. It's a defense to eviction, which if an eviction had taken place, which none did here, that would have been the first affirmative defense or argument against the eviction. And it would have brought the KCRO violation to light and would have subjected the owner to the significant consequences of fail to compliance with the statute. Substantial compliance does not compromise the remedial purpose of the KCRO. But that is, that's one issue. There's a completely separate issue that relates to what the legal effect was of the execution acceptance of the late offer. The arguments that somehow this doesn't satisfy an implicit waiver of the right to sue under a statute is befuddling to me. Because the cases on which the plaintiff relies in her brief relate to agreed orders entered in the midst of litigation. There is no requirement here, and I've seen no case to say that you have to have had an express waiver of any rights under the KCRO for that lease extension offer to have been, acceptance of it to have been, to waive the right to sue. It's really more of a common sense thing. If you have a right under a statute, and that right accrues the minute that the lease offer extension or relocation assistance letter is not sent on time, then that right of action exists until it doesn't. And here it existed the day after the time expired for that. And the plaintiff was represented by counsel who probably drafted the KCRO as early as January. And what they did was they lied in wait. They just laid, having that in their back pocket. If the KCRO is so important, and its purposes are so vital, then why was the suit to enforce it not filed the minute the violation happened? This would have, I mean, to hear what happened to the plaintiff, as regrettable as it was, the uncertainty of the home ownership, with this parade of evils that we just heard about for the first time in oral argument, that could have all been addressed head on, straight out, while U.S. Bank was actually in violation. And there would have been, what argument would have been made? I don't know, because what we would have had, we would have had a suit in January, maybe February, maybe March, any time before that lease offer letter. But what happened was they held it in their back pocket. They waited to see what would happen. And then the lease offer letter is ultimately given, and then there has to be a legal consequence to that. And it has nothing to do with substantial compliance. This is a straight-on waiver, implicit waiver of a statutory right. The right to sue under the KCRO existed, and then when the lease offer was extended, along with the option to relocate for the $10,600 fee, and the option was elected to remain, and the lease was accepted, that was, that had to terminate those rights. And that was, that's other affirmative matter that defeats the legal effect on which this complaint was based, which was timeliness of that offer. I agree that the KCRO is, I'm sorry. But I have to, but I want to ask you a question. Yeah. And I want a brief response. How do you respond to opposing counsel's argument that the offer that was made that was a 12-hour offer that was essentially revoked, that they couldn't make that offer because they were, that the property was sold to another party? Well, the fact is. Go ahead. All right. So the fact is they did make the offer. It was accepted, and it was honored. So what we don't have is a situation where anyone failed to comply with that. She lives there to this day. She is uninterrupted. So it, those are different facts that are not here. All right. Okay. And anything further? And Justice House, any questions? No, I have no questions. Thank you. All right. Anything further, counsel? Just, just to say, Judge, that I would agree with counsel that the KCRO is a needed statute, but what is not needed is a construction that results in a gotcha game. All right. I want to thank Justice House, and I want to thank the attorneys. The case was well argued and well briefed. We will take it under advisement, and the court stands adjourned.